IN THE UNITED STATES DISTRICT
COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

SCOTT FINESTONE AND REBECCA
FINESTONE, individually, and as parents and
friends of ZACHARY FINESTONE,

CASE NO.  03-14040 - CIV - Cohn/Lynch

        Plaintiffs,

vs.

FLORIDA POWER & LIGHT COMPANY,
a Florida Public Utility Corporation,

        Defendant.

_____/

# AMENDED COMPLAINT

COME NOW the Plaintiffs, SCOTT FINESTONE and REBECCA FINESTONE,

individually and as parents, guardians and friends of ZACHARY FINESTONE, their son, and sue

the Defendant, FLORIDA POWER & LIGHT COMPANY, a Florida Public Utility Corporation,

(hereinafter referred to as "FPL") and allege the following:

## ALLEGATIONS COMMON TO ALL COUNTS

1.    This is an action for damages, which exceeds the sum of One Million Dollars

($1,000,000.00).

This Court has jurisdiction pursuant to the Price Anderson Act, 42 U.S.C. §2210(n)(2).

2.    The substantive rules of decision shall be derived from the laws of the State of Florida in

which the nuclear incident involved occurs, unless such law is inconsistent with the respective

provision of §2210 of Price-Anderson. (§2014(hh)).

3.  At all times material hereto, SCOTT FINESTONE and REBECCA FINESTONE resided in St. Lucie County and Martin County, Florida.

4.  At all times material hereto, their son, ZACHARY FINESTONE, a minor, resided St. Lucie County and Martin County, Florida.

5.  At all times material hereto, ZACHARY FINESTONE was born on March 1, 1994, at St. Mary's Hospital in West Palm Beach, Florida.

6.  At all times material hereto, the FINESTONE family resided within a twenty-mile radius of the Defendant, FPL's Nuclear Power Plant located on Hutchinson Island.

7.  On or about March 2000, ZACHARY FINESTONE, a minor, was diagnosed with Stage 4 neuroblastoma, which spread to his bone marrow, as well as sustaining bone lesions in his thoracic and lumbar spine, hips, and one side of his head.

8.  Since that time, ZACHARY FINESTONE has undergone chemotherapy protocols, stem cell harvesting, removal of the left adrenal gland, a stem cell bone marrow transplant, radiation therapy, and is currently under treatment to attempt to be eligible for an experimental protocol to arrest and treat the neuroblastoma.

9.  In 2002, ZACHARY FINESTONE's baby teeth were studied and determined to have abnormally high levels of Strontium 90 (Sr-90), a fission product, one source of which is nuclear reactors.  In this instance, nuclear reactor fission products appear to be the dominant source of Zachary's exposure to Sr-90.

10. In 1997, the Florida Department of Health identified a cancer cluster among infants and children in St. Lucie County, Florida which was subsequently studied by both state and federal

health researchers, whereby known chemical carcinogens were eliminated as a possible cause of the increasing incidence of childhood cancers in St. Lucie County, Florida.

11.  At that time, gross beta activity in drinking water was analyzed using a measuring technique and/or instrumentation that could not specifically detect and quantify the high-energy beta exhibited by Sr-90.  High-energy beta activity is characteristic of Sr-90, a marker for nuclear fission products and a known carcinogen.  No in-body testing for Strontium 90 of any persons was performed during the state investigation.  FPL has done no adequate testing for beta activity in environmental samples as performed around all nuclear power plants during the 1970's. FPL's recent measurements did not measure for high-energy beta activity in environmental samples despite the ability to do so.

12.  At all times material hereto, since the time of the state and federal investigation, testing of the water in the Port St. Lucie area determined the presence of high energy beta particle activity in some area drinking water.

13.  At all times material hereto, radiochemical analysis of children's teeth demonstrated the presence of Strontium 90 at documented levels that in recent years  approach those levels documented during the height of the nuclear bomb testing of the 1950s-1960s.

14.  At all times material hereto, the Defendant withheld from the general public and the FINESTONE family the fact and extent to which there have been radioactive emissions from its Nuclear Power Plant in St. Lucie County, Florida located on Hutchinson Island.

15.  At all times material hereto, the Defendant was a public utility corporation formed under the laws of the State of Florida, was licensed by the State of Florida and the Nuclear Regulatory Commission and was generating and distributing electricity from the use of nuclear power at its

plant on Hutchinson Island in St. Lucie County, Florida.

16.  At all times material hereto, FPL built the Company's Hutchinson Island Power Plant in St. Lucie County, Florida.  Unit 1 came on line in 1976, Unit 2 in 1983. As part of a condition for licensing, for reporting actual releases in calculating offsite doses, the releases of the two units are combined.

17.  At all times material hereto, apart from time for repair, maintenance and refueling, this nuclear power plant has continuously operated as a generator of electricity from the use of nuclear power since its initial start up.

18.  At all times material hereto, the Defendant has been in the business of manufacturing, producing, processing, storing, disposing, releasing and/or otherwise handling radioactive toxic materials. The Defendant is required to comply with a complex, interwoven set of licensing requirements, statutes and regulations of the state and federal governments as applicable, and/or otherwise required to thoroughly acquaint itself with and comply with the latest regulations, knowledge and technology associated with the activities referred to in this complaint in order to maintain safety concerning the dangers associated with nuclear power plants and thereby limiting the dose from fission product to the public to below the maximum allowable dose.

(a)    These regulations include, but are not limited to the Atomic Energy Act of 1954, §11(hh) as amended, 42 U.S.C.A. §2014(hh), 10 CFR Part 20 and Part 50, 40 CFR Part 141, 40 CFR Part 190, national emission standards for hazardous air pollutants; radionuclides, i.e. the Clean Air Act, the Clean Water Act and the State of Florida regulations applicable to nuclear power plants and the plants own license.

(b)    In fact, the United States Nuclear Regulatory Commission in its Generic

Environmental Impact Statement for License Renewal of Nuclear Power Plants Appendix E "Radiation Protection Considerations for Nuclear Power Plant License Renewal" recognizes not only the regulations in effect, but also the philosophy behind those regulations.

(c)     Nuclear Power Plant licensees are required to maintain and implement adequate plant procedures that contain ALARA criteria subject to applicable regulations.   During plant licensing, applicants commit to implement ALARA (as low as reasonably achievable) programs consistent with NRC Regulatory Guide 8.8 and 8.10. The 1991 revision 10 CFR Part 20 codifies this requirement that licensee's establish a program to maintain radiation doses ALARA. Compliance with the commitments is acquired through 10 CFR Part 50 and the plant's technical specifications. The NRC recognizes that there are multiple standards and regulations controlling nuclear power plants.

(d)     THE LICENSE: St. Lucie I and II each applied for and received an operating license from the NRC.  The license is designed to minimize emissions of nuclear waste from the plant. That design is presented to the NRC and a license is issued subject to operating under the conditions of licensing.  The license requires the implementation and adoption of technical specifications which are implemented through the ODCM - the off site dose calculation manual.

(e)     Upon information and belief, and review of those records publicly available the Defendant initially operated within its license.  Subsequently, the Defendant knowingly operated with significant fuel rod cladding failures.  These cladding failures exposed the nuclear fuel pellets, contained in the fuel rods, to the reactor coolant.  This exposure allowed more than expected fission products, over five percent of which was Sr-90, to migrate into the reactor

coolant. This subsequently led to much higher fission product releases, including Sr-90 from the plant. Despite that knowledge, upon information and belief, the plant continued to operate.

(f)      Additionally, upon information and belief, the plant operated outside its license by knowingly having in place a non-operational system designed to retain and monitor radioactive effluents from the plant. Upon information and belief, despite knowing the system was not functioning for years, the plants continued to operate until a new NRC resident inspector forced FP&L to make the system operational.

(g)      Upon information and belief Defendant also failed in complying with its own license requirements by having instruments designed to monitor gaseous and liquid discharges improperly calibrated such that there was essentially no effective monitoring in place.

(h)      The Defendant reported discharging radioactive isotopes with very short half-lives (ranging from less than 60 minutes to 3 hours) in releases of liquid effluents from 30-day (thirty-day) holding tanks, which demonstrates a very short holdup (decay time far less than the 30-days), and processing to levels compliant with regulations, in violation of the Defendant's ODCM programs and plant operating procedures.

19. At all times material hereto, the Defendant, its agents, employees, representatives knew or should have known in the exercise of reasonable care, it was releasing hazardous radioactive materials which went into the air, water and soil.

20. At all times material hereto, the Defendant failed to continuously and accurately measure radioactivity at its gaseous and liquid release points, failed to continuously and accurately measure radioactivity in environmental samples, failed to abate or lessen the release of the toxic and hazardous materials, even though it knew or should have known of the significant health

risks to the general public and, more specifically, to ZACHARY FINESTONE.   Upon

information and belief, the Defendant monitors environmental discharges for radiation at the

plant but continuously measures only gamma-ray emitting isotopes, and not beta-radiation

emitters, including Sr-90.

21.  At all times material hereto, the Defendant failed to adequately monitor the quality and

quantity of its radioactive emissions, including Sr-90, despite the known analytical ability to do

so.  In fact, the St. Lucie plants were the dirtiest, and discharged the most radioactivity from a

two-unit site, of any operating pressurized water reactor dual unit site during the period 1976 to

1993.  Recognizing that St. Lucie I opened in 1976, and St. Lucie II opened in 1983 and allowing

for years of non-operation, a review of the public documents supports this finding.

22.  At all times material hereto, the Defendant had a duty and high standard of care to operate its

St. Lucie County Nuclear Power Plant in the safest manner possible so as not to endanger

members of the public, which included ZACHARY FINESTONE.

23.  At all times material hereto, the Defendant breached its duty of care by failing to properly

maintain and monitor the nuclear power plant in a safe manner to prevent improper radioactive

emission and/or emissions.

24.  At all times material hereto, the Defendant's breach of its duty of care, by allowing

emissions of a radioactive nuclear by-product was a proximate cause or substantially contributed

to ZACHARY FINESTONE's development of a neuroblastoma and Plaintiffs' damages as set

forth in this Amended Complaint.

## COUNT I – NEGLIGENCE AGAINST FP&L
## PURSUANT TO 10 CFR SECTION 20.1301

25.  The general allegations are realleged as if set forth fully herein.

26.  At all times material hereto, the Defendant knew or should have known of the existence of radioactive hazards and the release of other toxic materials into the air, water, soil and underground areas as part of the processing, production, storing, manufacturing, disposal and release of such materials from the St. Lucie County Nuclear Power Plant located on Hutchinson Island.  The Defendant had a duty, at the minimum, to conform its release of nuclear fission product to the regulations set forth by the Atomic Energy Act of 1954 as amended. To that end, FPL had a duty to comply with the regulations set forth by 10 CFR 20.1301, "Dose Limit for Individual Members of the Public".

27.  At all times material hereto, the Defendant had a duty to take appropriate action to prevent the release and/or to properly treat the release of radioactive and other toxic materials at its plant in order to make certain the annual dose to the public was below that acceptable effective dose equivalent in a year exclusive of background radiation and medical administration. The Defendant breached its statutory duty at the minimum by:

(a) Failing to operate the Hutchinson Island Nuclear Power Plant in a reasonably safe manner so as not to endanger the health of the Plaintiffs who would foreseeably be exposed to radiation waste released by the Defendant's Hutchinson Island Nuclear Power Plant in an amount that exceeds the maximum allowable dose to the public outside the plant.

(b) Failing to use then existing ALARA technological data and knowledge available relating to radiological safety and other toxic waste safety methods to properly monitor emissions and/or residues resulting from the Defendant's activities and/or failing to take appropriate preventative and protective measures to minimize these exposures in compliance with 10 CFR 20 Section 1301.

(c) Failing to use proper procedures and proper engineering controls based upon sound radiation protection principles to prevent emissions from exceeding the statutory doses to the members of the public that are set forth by federal regulation.

(d) In failing to operate the facility in a manner that would have prevented the release of radiation and other toxic materials that were discharged into the air, water and underground areas in excess of the allowable federal regulation applicable at the time.

(e) Failing to accurately analyze and continuously monitor releases of fission product. As a result of the breach of its statutory duty, the nuclear effluent limitations from these fission product emissions exceeded those allowable by federal regulations.

28. As a direct and proximate cause of the Defendant's negligence, ZACHARY FINESTONE has in the past and will continue in the future over his lifetime, suffer bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, inconvenience, expense of hospitalization, medical and nursing care and treatment, loss of ability to earn money, loss of earning capacity, and continuing aggravation of previously pre-existing conditions. All of the damages have been sustained in the past and will continue in the future; SCOTT FINESTONE has in the past and will in the future suffer the loss of ZACHARY FINESTONE's services, and has and will continue to incur medical expenses and other expenses,

as well as loss of parental consortium, comfort, society and all attentions due to the Defendant's negligence and REBECCA FINESTONE has in the past and will in the future suffer the loss of ZACHARY FINESTONE's services and has and will continue to incur medical and other expenses, as well as loss of parental consortium comfort, society and all attentions due to the Defendant's negligence.

WHEREFORE, the Plaintiffs, SCOTT FINESTONE and REBECCA FINESTONE, individually, and as parents, guardians and friends of ZACHARY FINESTONE hereby request judgment for damages against the Defendant, FLORIDA POWER & LIGHT COMPANY, and further demand trial by jury as to all issues.

## COUNT II - NEGLIGENCE OF FPL PURSUANT TO 10 CFR 20.1302

29. Plaintiffs reallege all general allegations and further allege:

30. At all times material, FPL had a duty to comply with 10 CFR 20 subpart D. - "Radiation Dose Limits for Individual Members of the Public", 10 CFR section 20.1302 - "Compliance with those limits for individual members of the public" which states:

(a) the licensee shall make or cause to be made, as appropriate, surveys of radiation levels and unrestricted and controlled areas to radioactive materials and effluents released to unrestricted and controlled areas to demonstrate compliance with the dose limits for individual members of the public in section 20.1301.

(b) A licensees shall show compliance with the annual dose limit in section 20.1301 by -

(1) Demonstrating by measurement or calculation that the total effective dose equivalent to the individual likely to receive the highest dose from the licensed operation does not exceed the annual dose limit; or

(2) demonstrating that –

(i) The annual average concentrations of radioactive material released in gaseous and liquid effluents at the boundary of the unrestricted area do

Page 10 of 27

not exceed the values specified in **Table 2 of Appendix B to Part 20**; and

(ii) If an individual were continuously present in an unrestricted area, the dose from external sources would not exceed 0.002 rem in an hour and 0.05 rem in a year.

Defendant FPL breached its duty set forth above by exceeding the value specified in Table 2 Appendix B to Part 20 over much of the life of the plant thereby breaching its duty to ensure it did not exceed those effluent limitations set forth in Table 2 Appendix B.

31. Defendant's breach of its duty of compliance allowed excessive releases into the environment in excess of that allowable in Appendix B Part 20 and as a direct and proximate cause of the Defendant's negligence, ZACHARY FINESTONE has in the past and will continue in the future over his lifetime, suffer bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, inconvenience, expense of hospitalization, medical and nursing care and treatment, loss of ability to earn money, loss of earning capacity, and continuing aggravation of previously pre-existing conditions. All of the damages have been sustained in the past and will continue in the future; SCOTT FINESTONE has in the past and will in the future suffer the loss of ZACHARY FINESTONE's services, and has and will continue to incur medical expenses and other expenses, as well as loss of parental consortium, comfort, society and all attentions due to the Defendant's negligence and REBECCA FINESTONE has in the past and will in the future suffer the loss of ZACHARY FINESTONE's services and has and will continue to incur medical and other expenses, as well as loss of parental consortium comfort, society and all attentions due to the Defendant's negligence.

WHEREFORE, the Plaintiffs, SCOTT FINESTONE and REBECCA FINESTONE, individually, and as parents, guardians and friends of ZACHARY FINESTONE hereby request judgment for damages against the Defendant, FLORIDA POWER & LIGHT COMPANY, and further demand trial by jury as to all issues.

## COUNT III -NEGLIGENCE OF FPL PURSUANT TO 10 CFR SECTION 20.1101

32. Plaintiffs reallege all general allegations and further allege:

33. At all times material, FPL had a duty to comply with Standards Protection against Radiation and Subpart B Radiation Protection Programs, of 10 CFR § 20.1101, which states:

> (a) Each licensee shall develop, document, and implement a radiation protection program commensurate with the scope and extent of licensed activities and sufficient to ensure compliance with the provisions of this part...

> b) The licensee shall use, to the extent practical, procedures and engineering controls based upon sound radiation protection principles to achieve occupational doses and **doses to the members of the public that are as low as is reasonably achievable (ALARA)**. ...**[Emphasis Added]**

> c) To implement **the ALARA requirements [emphasis added]** of section 20.1101(b), and **notwithstanding the requirements of section 20.1301 [emphasis added]** of this part, a constraint on air emissions of radioactive material to the environment, excluding Radon-222 and its daughters, shall be established by licensees other than those subject to section 50.34a, such that the individual member the public likely to receive the highest dose will not be expected to receive a total effective dose equivalent in excess of 10 mrem (0.1mSv) per year from these emissions. If a licensee subject to this requirement exceeds this dose constraint, the licensee shall report the exceedance as provided in section 20.2203 and promptly take appropriate corrective action to ensure against recurrence.

34. FPL breached the above duty by failing to have in place a radiation protection program, such that the total effective dose equivalent to members of the public did not exceed the federal regulation requirement of 10 mrem per year. FPL also failed to report exceeding the limits because it failed to

properly monitor and determine in fact it was exceeding the statutory duty set forth in 10 CFR § 20.1101.

35.  As a direct and proximate cause of the Defendant's negligence, ZACHARY FINESTONE has in the past and will continue in the future over his lifetime, suffer bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, inconvenience, expense of hospitalization, medical and nursing care and treatment, loss of ability to earn money, loss of earning capacity, and continuing aggravation of previously pre-existing conditions.  All of the damages have been sustained in the past and will continue in the future; SCOTT FINESTONE has in the past and will in the future suffer the loss of ZACHARY FINESTONE's services, and has and will continue to incur medical expenses and other expenses, as well as loss of parental consortium, comfort, society and all attentions due to the Defendant's negligence and REBECCA FINESTONE has in the past and will in the future suffer the loss of ZACHARY FINESTONE's services and has and will continue to incur medical and other expenses, as well as loss of parental consortium comfort, society and all attentions due to the Defendant's negligence.

WHEREFORE, the Plaintiffs, SCOTT FINESTONE and REBECCA FINESTONE, individually, and as parents, guardians and friends of ZACHARY FINESTONE hereby request judgment for damages against the Defendant, FLORIDA POWER & LIGHT COMPANY, and further demand trial by jury as to all issues.

## COUNT IV - NEGLIGENCE OF FPL PURSUANT TO ITS
## OWN IDENTIFIED DUTY PRESENTED TO THE COURT
## AND MEMBERS OF THE PUBLIC IN ITS PURSUIT FOR RELICENSING
## AND PURSUANT TO 10 C.F.R. 50 et. Seq.

36. Plaintiffs reallege all general allegations and further allege:

37. In its own documents filed with this court for judicial notice, FPL sets forth its own duty *required by its facility operating license* for St. Lucie I and II in its license administrative controls (see attachment A):

Part f - Radioactive Effluent Controls Program:

A program shall be provided conforming to 10 CFR 50.36a for the control of radioactive effluents and for maintaining doses to MEMBERS OF THE PUBLIC from radioactive effluents as low as reasonably achievable. The program shall:

(1) be contained in the ODCM, (offsite dose calculation manual)

(2) be implemented by operating procedures, and

(3) include remedial actions to be taken whenever the program limits are exceeded.

The program shall include the following elements:

(1)Limitations on the operability of radioactive liquid and gaseous monitoring instrumentation including surveillance tests and set point determination in accordance with the methodology in the ODCM.

(2)Limitations of the concentrations of radioactive material released in liquid effluents to UNRESTRICTED AREAS conforming to 10 times the concentration values in 10 CFR 20.1001-20.2401, Appendix B, Table 2, Column 2.

(3)Monitoring, sampling, and analysis of radioactive liquid and gaseous effluents in accordance with 10 CFR 20.1302 **and with the methodology and parameters in the ODCM. (Emphasis added)**

(4)Limitations on the annual and quarterly doses or dose commitment to a MEMBER OF THE PUBLIC for radioactive materials in liquid effluents released from each unit to UNRESTRICTED AREAS **conforming to Appendix I to 10 CFR Part 50...**

(5)Determination of cumulative and projected dose contributions from radioactive effluents for the current calendar quarter and current calendar year in accordance with the methodology and parameters in the ODCM at least every 31 days,

(6)Limitations on the operability and use of the liquid and gaseous effluent treatment systems to ensure that the appropriate portions of the systems are used to reduce releases of radioactivity when the projected doses in a 31 day period would exceed 2% of the guidelines and the annual dose or dose commitment conforming to Appendix I to 10 CFR Part 50,

(7)Limitations on the dose rate resulting from radioactive material released and gaseous effluents to areas at or beyond the SITE BOUNDARIES shall be limited ...

(8)Limitations on the annual and quarterly air doses resulting from noble gases released in gaseous effluents from each unit to areas beyond the SITE BOUNDARY conforming to Appendix I to 10 CFR Part 50.

(9)Limitations on the annual and quarterly doses to a MEMBER OF THE PUBLIC from Iodine 131, Iodine 133, tritium and all radionuclides in particulate form with half-lives greater than 8 days in gaseous effluents released from each unit to areas beyond the SITE BOUNDARY conforming to Appendix I to 10 CFR Part 50.

(10)Limitations on the annual dose or dose commitment to any MEMBER OF THE PUBLIC due to releases of radioactivity and to radiation from uranium fuel cycle sources conforming to 40 CFR Part 190.

38. FPL breached its own duties set forth in its administrative controls and its representations to members of the public by failing to properly monitor, sample, analyze radioactive effluent and failing to limit those effluents released from each unit to unrestricted areas. In conformance with appendix one to 10 CFR Part 50 and failing to limit the dose rate resulting from radioactive material released in gaseous effluents in excess of Appendix I to 10 CFR Part 50.

39. As a direct and proximate cause of the Defendant's negligence, ZACHARY FINESTONE has in the past and will continue in the future over his lifetime, suffer bodily

injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, inconvenience, expense of hospitalization, medical and nursing care and treatment, loss of ability to earn money, loss of earning capacity, and continuing aggravation of previously pre-existing conditions.  All of the damages have been sustained in the past and will continue in the future; SCOTT FINESTONE has in the past and will in the future suffer the loss of ZACHARY FINESTONE's services, and has and will continue to incur medical expenses and other expenses, as well as loss of parental consortium, comfort, society and all attentions due to the Defendant's negligence and REBECCA FINESTONE has in the past and will in the future suffer the loss of ZACHARY FINESTONE's services and has and will continue to incur medical and other expenses, as well as loss of parental consortium comfort, society and all attentions due to the Defendant's negligence.

WHEREFORE, the Plaintiffs, SCOTT FINESTONE and REBECCA FINESTONE, individually, and as parents, guardians and friends of ZACHARY FINESTONE hereby request judgment for damages against the Defendant, FLORIDA POWER & LIGHT COMPANY, and further demand trial by jury as to all issues.

## COUNT V NEGLIGENCE OF FPL PURSUANT TO 10 CFR 50 APPENDIX A CRITERION 64

40.  Plaintiffs reallege all general allegations and further allege:

41.  At all times material, since 1976, FPL had a duty to comply with 10 CFR 50 Appendix A Criterion 64, "Monitoring Radioactivity Releases", which states in part:

Means shall be provided for monitoring the reactor containment atmosphere, spaces containing components for recirculation of loss-of-coolant accident fluids, effluent discharge paths, and the plant environs for radioactivity that may be released from normal operations, including anticipated operational occurrences, and from postulated accidents.

42.  FPL breached its duty pursuant to 10 CFR 50 Appendix A Criterion 64 by not conducting business in such a manner as to properly monitor effluent releases as set forth set forth in 10 CFR 50 Appendix A Criterion 64.  FPL failed to properly monitor its radioactive effluent releases when it knew, or should have known, that the failure to properly monitor effluent releases would cause excessive exposure of nuclear effluent to the public in general and Zachary Finestone in particular.

43.  As a direct and proximate cause of the Defendant's negligence, ZACHARY FINESTONE has in the past and will continue in the future over his lifetime, suffer bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, inconvenience, expense of hospitalization, medical and nursing care and treatment, loss of ability to earn money, loss of earning capacity, and continuing aggravation of previously pre-existing conditions.  All of the damages have been sustained in the past and will continue in the future; SCOTT FINESTONE has in the past and will in the future suffer the loss of ZACHARY FINESTONE s services, and has and will continue to incur medical expenses and other expenses, as well as loss of parental consortium, comfort, society and all attentions due to the Defendant's negligence and REBECCA FINESTONE has in the past and will in the future suffer the loss of ZACHARY

FINESTONE s services and has and will continue to incur medical and other expenses, as well as loss of parental consortium comfort, society and all attentions due to the Defendant's negligence.

WHEREFORE, the Plaintiffs, SCOTT FINESTONE and REBECCA FINESTONE, individually, and as parents, guardians and friends of ZACHARY FINESTONE hereby request judgment for damages against the Defendant, FLORIDA POWER & LIGHT COMPANY, and further demand trial by jury as to all issues.

### COUNT VI NEGLIGENCE OF FPL PURSUANT TO 40 CFR 190

44.    Plaintiffs reallege all general allegations and further allege:

45.    At all times material, since 1976, FPL had a duty to comply with 40 CFR § 190 "Environmental Radiation Protection Standards for Nuclear Power Operations" which states in part:

> Section 190.01
>
> Applicability:  The provisions of this part apply to radiation doses received by members of the public in the general environment and to radioactive materials introduced into the general environment as the result of operations, which are part of a nuclear fuel cycle.

The regulation sets forth in section 190.10:

>"Standards for Normal Operations": Operations covered by this Subpart shall be conducted in such a manner as to provide reasonable assurance that: (a) The annual dose equivalent does not exceed 25 millirems to the whole body, 75 millirems to the thyroid, and 25 millirems to any other organ of any member of the public as a result of exposures to planned discharges of radioactive materials, radon and its daughters excepted, to the general environment from uranium fuel cycle operations into radiation from the operations.

46.     FPL breached its duty pursuant to 40 CFR Part 190 by not conducting business in such a manner as to ensure the annual dose equivalent did not exceed the doses set forth in 40 CFR Part 190.10.  FPL failed to properly treat, limit, and monitor its radioactive effluent releases, specifically by failing to terminate effluent releases when their processing systems were either inoperable or were not effectively removing the radioactive materials from the liquid or gaseous waste, when it knew, or should have known, that the failure to stop production would cause excessive exposure of nuclear effluent to the public in general and Zachary Finestone in particular.

47.     As a direct and proximate cause of the Defendant's negligence, ZACHARY FINESTONE has in the past and will continue in the future over his lifetime, suffer bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, inconvenience, expense of hospitalization, medical and nursing care and treatment, loss of ability to earn money, loss of earning capacity, and continuing aggravation of previously pre-existing conditions.  All of the damages have been sustained in the past and will continue in the future; SCOTT FINESTONE has in the past and

will in the future suffer the loss of ZACHARY FINESTONE's services, and has and will continue to incur medical expenses and other expenses, as well as loss of parental consortium, comfort, society and all attentions due to the Defendant's negligence and REBECCA FINESTONE has in the past and will in the future suffer the loss of ZACHARY FINESTONE's services and has and will continue to incur medical and other expenses, as well as loss of parental consortium comfort, society and all attentions due to the Defendant's negligence.

WHEREFORE, the Plaintiffs, SCOTT FINESTONE and REBECCA FINESTONE, individually, and as parents, guardians and friends of ZACHARY FINESTONE hereby request judgment for damages against the Defendant, FLORIDA POWER & LIGHT COMPANY, and further demand trial by jury as to all issues.

## COUNT VII - NEGLIGENCE OF FPL PURSUANT TO 10 CFR § 50 App I

48.     Plaintiffs reallege all general allegations and further allege:

49.     FPL uses liquid, gaseous and solid wastes that are the by-products for the operation of St. Lucie Units 1 and 2. At all times material, FPL had a duty to comply with 10 CFR § 50 App. I entitled "Numerical Guides for Design Objectives and Limiting Conditions for Operation to meet the Criterion "As Low As Is Reasonably Achievable" which sets forth that the plant meets the requisite ALARA standard if the dose to an individual is less than 5 mrem whole body or 15 mrem to any organ. This is a statutory condition for which a nuclear power plant must comply to operate and meet design objectives.

FPL breached the above duty by failing to operate in accordance with its design objectives and have in place operations allowing itself to meet the standards set forth in 10 CFR § 50 App. I radioactive waste management systems and effluent control systems, such that the total dose to an individual is less than 5 mrem whole body or 15 mrem to any organ. Upon information and belief available the Defendant breached its duty and exceeded the regulation set forth in 10 CFR 50 by allowing the plant to operate without adequate monitoring, and allowing uncontrolled nuclear waste emissions to be released into the environment.

50.    As a direct and proximate cause of the Defendant's negligence, ZACHARY FINESTONE has in the past and will continue in the future over his lifetime, suffer bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, inconvenience, expense of hospitalization, medical and nursing care and treatment, loss of ability to earn money, loss of earning capacity, and continuing aggravation of previously pre-existing conditions.  All of the damages have been sustained in the past and will continue in the future; SCOTT FINESTONE has in the past and will in the future suffer the loss of ZACHARY FINESTONE's services, and has and will continue to incur medical expenses and other expenses, as well as loss of parental consortium, comfort, society and all attentions due to the Defendant's negligence and REBECCA FINESTONE has in the past and will in the future suffer the loss of ZACHARY FINESTONE's services and has and will continue to incur medical and other expenses, as well as loss of parental consortium comfort, society and all attentions due to the Defendant's negligence.

WHEREFORE, the Plaintiffs, SCOTT FINESTONE and REBECCA FINESTONE, individually, and as parents, guardians and friends of ZACHARY FINESTONE hereby request judgment for damages against the Defendant, FLORIDA POWER & LIGHT COMPANY, and further demand trial by jury as to all issues.

## COUNT VIII - NEGLIGENCE OF FP&L PURSUANT TO VIOLATIONS OF ITS OWN LICENSE

51.     Plaintiffs reallege all general allegations and further allege:

52.     At all times material FP&L had a duty to abide by the conditions of its license, which authorized it to operate a nuclear power plant in Hutchinson Island. The Defendant breached its duty by:

(1) continuing to operate a nuclear power plant with known fuel cladding failures that caused the release of radiation into the reactor coolant which was subsequently made available for release into the environment.

(2) continuing to operate a nuclear power plant for years with a known non-functioning effluent monitoring system,

(3) continuing to operate with serious problems with the waste gas decay system and compressors and waste liquid processing systems

(4) continuing to operate a nuclear power plant with non-calibrated or improperly calibrated effluent monitoring equipment.

53.     As a direct and proximate cause of the Defendant's negligence, ZACHARY FINESTONE has in the past and will continue in the future over his lifetime, suffer bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of the

capacity for the enjoyment of life, inconvenience, expense of hospitalization, medical and nursing care and treatment, loss of ability to earn money, loss of earning capacity, and continuing aggravation of previously pre-existing conditions.  All of the damages have been sustained in the past and will continue in the future; SCOTT FINESTONE has in the past and will in the future suffer the loss of ZACHARY FINESTONE's services, and has and will continue to incur medical expenses and other expenses, as well as loss of parental consortium, comfort, society and all attentions due to the Defendant's negligence and REBECCA FINESTONE has in the past and will in the future suffer the loss of ZACHARY FINESTONE's services and has and will continue to incur medical and other expenses, as well as loss of parental consortium comfort, society and all attentions due to the Defendant's negligence.

WHEREFORE, the Plaintiffs, SCOTT FINESTONE and REBECCA FINESTONE, individually, and as parents, guardians and friends of ZACHARY FINESTONE hereby request judgment for damages against the Defendant, FLORIDA POWER & LIGHT COMPANY, and further demand trial by jury as to all issues.

## COUNT IX — STRICT LIABILITY PURSUANT TO RESTATEMENT OF TORTS SECTION 519 AND 520, PRICE- ANDERSON ACT 42 U.S.C. SECTION 2014 (hh) PURSUANT TO FLORIDA LAW

54.     The general allegations are realleged as if set forth fully herein.

55.     At all times material hereto, the nature of the Defendant's activity in operating a nuclear power plant constitutes an abnormally and extraordinarily dangerous ultra-hazardous activity, in that it poses an extreme risk of serious harm to the Floridian Plaintiffs and cannot

be eliminated even with the exercise of the utmost care.

56.    Nuclear power is not a common activity and its use creates inherent risks.

57.    The Defendant's continual operation of an ultra-hazardous activity despite its knowing of defects in its fuel and monitoring systems in direct violation of its license authorizing its operation constitutes negligence for which the Defendant is strictly liable. Defendant controlled the methodology of production and allowed emissions and/or discharge of by-product in excess of acceptable industry and/or regulation standards and its own license causing exposure and damages to the Plaintiffs for which it is strictly liable.

58.    At all times material hereto, pursuant to the Restatement of Torts Sections 519 and 520, the Price-Anderson Act Section 2014(hh) the Defendant is strictly liable for Plaintiffs' injuries and damages resulting from exposure to nuclear by-products which proximately caused or substantially contributed to the damages complained of herein and the Defendant, due to its strict liability, is responsible for all damages sustained to ZACHARY FINESTONE which includes sustaining bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, inconvenience, expense of hospitalization, medical and nursing care and treatment, loss of earning capacity, loss of the ability to earn money, the aggravation of a pre-existing condition and in which all damages are permanent in nature, have continued in the past and will continue in the future of his lifetime, as well as SCOTT FINESTONE AND REBECCA FINESTONE sustaining in the past and will suffer in the future for the loss of ZACHARY FINESTONE's services, comfort, society and affections, as well as their incurring medical expenses in the care and treatment of ZACHARY FINESTONE's injuries proximately caused by the Defendants, as

Page 24 of 27

well as a loss of parental consortium due to ZACHARY FINESTONE's injuries.

WHEREFORE, the Plaintiffs, SCOTT FINESTONE and REBECCA FINESTONE, individually and as parents, guardians and friends of ZACHARY FINESTONE, a minor hereby demand judgment for damages against the Defendant, Florida Power & Light Company, and further demand trial by jury as to all issues.

## COUNT X - NEGLIGENCE OF FPL PURSUANT TO THE CLEAN AIR ACT 42 U.S.C. SECTION 7401 et seq and 33 U.S.C.1251 et seq. AS RECOGNIZED BY PRICE-ANDERSON 42 U.S.C. 2022(e) and PURSUANT TO ITS OWN LICENSE

59.    Plaintiffs reallege all general allegations and further allege:

60.    At all times material FPL had a duty to comply with the Clean Air and Clean Water Act standards. Price Anderson Act specifically adopts the obligations of the nuclear industry to comply with the standards and dose requirements set forth in those acts. The Defendant breached its statutory duty required by both acts by exceeding those standards. The breach of the duty proximately caused or substantially contributed to the damages as set forth below.

61.    As a direct and proximate cause of the Defendant's negligence, ZACHARY FINESTONE has in the past and will continue in the future over his lifetime, suffer bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, inconvenience, expense of hospitalization, medical and nursing care and treatment, loss of ability to earn money, loss of earning capacity, and continuing aggravation of previously pre-existing conditions. All of the damages have been sustained in the past and will continue in the future; SCOTT FINESTONE has in the past and will in the future suffer the loss of ZACHARY FINESTONE's services, and has and will continue to incur medical expenses and other expenses, as well as loss of parental

consortium, comfort, society and all attentions due to the Defendant's negligence and

REBECCA FINESTONE has in the past and will in the future suffer the loss of ZACHARY

FINESTONE's services and has and will continue to incur medical and other expenses, as

well as loss of parental consortium comfort, society and all attentions due to the Defendant's

negligence.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original and one copy of this document has been filed with

the Clerk of the United States District Court, 299 E. Broward Blvd., Ft. Lauderdale, FL

33301 with copies to all counsel of record this 30th day of August, 2004 via US Mail.

Respectfully submitted,

NANCY LA VISTA, Esq., of
Lytal, Reiter, Clark Fountain & Williams,
LLP
PO Box 4056 (33402)
515 N. Flagler Drive, Suite 1000
West Palm Beach, FL 33401
Phone:(561) 655-1990
Fax: (561)832-2932
Attorneys for Plaintiff
Florida Bar No. 855596

Robert J. McKee and Michael Ryan, of
Krupnick, Campbell, Malone, Buser, Slama
Lieberman & McKee
700 SE Third Avenue
 Suite100
Ft. Lauderdale, FL 33316
Phone: 954/763-8181
Fax: 954/763-8292
Florida Bar No.: 0972614


Stuart H. Smith, Esq., of
Smith, Stagg, LLC
365 Canal Street - Suite 2850
New Orleans, LA 70130
Louisiana Bar No.: 17805

**SERVICE LIST - FINESTONE V. FPL**
**CASE NO.: 03-140040-CIV-COHN/LYNCH**
**BLAKE V. FPL**
**CASE NO.: 03-14128 - CIV -COHN/LYNCH**

**NANCY LA VISTA, ESQ.**
**Lytal, Reiter, Clark, Fountain &**
**Williams, LLP**
**PO BOX 4056**
**West Palm Beach, Fl 33402-4056**

**ROBERT J. McKEE, ESQ.,**
**Krupnick, Campbell, Malone, Buser, Slama, Lieberman**
**& McKee**
**700 S.E. Third Avenue, Ste. 100**
**Ft. Lauderdale, FL  33316**

**STUART H. SMITH, ESQ., of**
**Stagg, Smith LLC**
**365 Canal Street**
**New Orleans, LA 70130**

**Alvin B. Davis, Esq./Denise Crockett, Esq.**
**Steele, Hector, Davis, et. al.**
**200 S. Biscayne Blvd. - Suite 4000**
**Miami, FL 33131-2398**

**Donald E. Jose, Esq./Kristen B. Komer, Esq.**
**Jose & Wiedis**
**Goshen Executive Plaza**
**1450 East Boot Road - Suite 300B**
**West Chester, PA 19380**

**PLAINTIFFS' EXHIBIT "A"**

ADMINISTRATIVE CONTROLS

    (iv)  Procedures for the recording and management of data,

    (v)  Procedures defining corrective actions for all off-control point chemistry conditions, and

    (vi)  A procedure identifying (a) the authority responsible for the interpretation of the data, and (b) the sequence and timing of administrative events required to initiate corrective action.

d.    Backup Method for Determining Subcooling Margin

A program which will ensure the capability to accurately monitor the Reactor Coolant System subcooling margin. This program shall include the following:

    (i)  Training of personnel, and

    (ii)  Procedures for monitoring.

e.    DELETED

f.    Radioactive Effluent Controls Program

A program shall be provided conforming with 10 CFR 50.36a for the control of radioactive effluents and for maintaining the doses to MEMBERS OF THE PUBLIC from radioactive effluents as low as reasonably achievable. The program (1) shall be contained in the ODCM, (2) shall be implemented by operating procedures, and (3) shall include remedial actions to be taken whenever the program limits are exceeded. The program shall include the following elements:

    1)  Limitations on the operability of radioactive liquid and gaseous monitoring instrumentation including surveillance tests and setpoint determination in accordance with the methodology in the ODCM.

    2)  Limitations on the concentrations of radioactive material released in liquid effluents to UNRESTRICTED AREAS conforming to ten times the concentration values in 10 CFR 20.1001 - 20.2401, Appendix B, Table 2, Column 2.

497

3)   Monitoring, sampling, and analysis of radioactive liquid and
     gaseous effluents in accordance with 10 CFR 20.1302 and with
     the methodology and parameters in the ODCM,

4)   Limitations on the annual and quarterly doses or dose commit-
     ment to a MEMBER OF THE PUBLIC from radioactive materials in
     liquid effluents released from each unit to UNRESTRICTED
     AREAS conforming to Appendix I to 10 CFR Part 50,

5)   Determination of cumulative and projected dose contributions
     from radioactive effluents for the current calendar quarter
     and current calendar year in accordance with the methodology
     and parameters in the ODCM at least every 31 days,

6)   Limitations on the operability and use of the liquid and
     gaseous effluent treatment systems to ensure that the appro-
     priate portions of these systems are used to reduce releases
     of radioactivity when the projected doses in a 31-day period
     would exceed 2 percent of the guidelines for the annual dose
     or dose commitment conforming to Appendix I to 10 CFR
     Part 50,

7)   Limitations on the dose rate resulting from radioactive material
     released in gaseous effluents to areas at or beyond the SITE
     BOUNDARY shall be limited to the following:

     a)  For noble gases:  Less than or equal to 500 mrem/yr to the
         total body and less than or equal to 3000 mrem/yr to the skin,
         and

     b)  For Iodine-131, for Iodine-133, for tritium, and for all
         radionuclides in particulate form with half-lives greater than
         8 days:  Less than or equal to 1500 mrem/yr to any organ;

8)   Limitations on the annual and quarterly air doses resulting
     from noble gases released in gaseous effluents from each unit
     to areas beyond the SITE BOUNDARY conforming to Appendix I to
     10 CFR Part 50,

9)   Limitations on the annual and quarterly doses to a MEMBER OF
     THE PUBLIC from Iodine-131, Iodine-133, tritium, and all
     radionuclides in particulate form with half-lives greater
     than 8 days in gaseous effluents released from each unit to
     areas beyond the SITE BOUNDARY conforming to Appendix I to
     10 CFR Part 50,

10)  Limitations on the annual dose or dose commitment to any
     MEMBER OF THE PUBLIC due to releases of radioactivity and to
     radiation from uranium fuel cycle sources conforming to 40
     CFR Part 190.

g.  Radiological Environmental Monitoring Program

A program shall be provided to monitor the radiation and radio-
nuclides in the environs of the plant.  The program shall provide
(1) representative measurements of radioactivity in the highest
potential exposure pathways, and (2) verification of the accuracy
of the effluent monitoring program and modeling of environmental
exposure pathways.  The program shall (1) be contained in the ODCM,

ADMINISTRATIVE CONTROLS

(2) conform to the guidance of Appendix I to 10 CFR Part 50, and
(3) include the following:

1) Monitoring, sampling, analysis, and reporting of radiation and radionuclides in the environment in accordance with the methodology and parameters in the ODCM.

2) A Land Use Census to ensure that changes In the use of areas at and beyond the SITE BOUNDARY are identified and that modifications to the monitoring program are made if required by the results of this census, and

3) Participation in a Interlaboratory Comparison Program to ensure that independent checks on the precision and accuracy of the measurements of radioactive materials in environmental sample matrices are performed as part of the quality assurance program for environmental monitoring.

h.   Containment Leakage Rate Testing Program

A program to implement the leakage rate testing of the containment as required by 10 CFR 50.54(o) and 10 CFR 50 Appendix J, Option B, as modified by approved exemptions. This program is in accordance with the guidelines contained in Regulatory Guide 1.163, "Performance-Based Containment Leak-Test Program," as modified by the following exception(s):

a)   Bechtel Topical Report, BN-TOP-1 or ANS 56.8-1994 (as recommended by R.G. 1.163) will be used for type A testing.

b)   The first Type A test performed after the May 1993 Type A test shall be no later than May 2008.

The peak calculated containment internal pressure for the design basis loss of coolant accident $P_a$, is 39.6 psig. The containment design pressure is 44 psig.

The maximum allowed containment leakage rate, $L_a$, at $P_a$, shall be 0.50% of containment air weight per day.

Leakage rate acceptance criteria are:

a.   Containment leakage rate acceptance criterion is $\leq 1.0 \, L_a$. During the first unit startup following testing in accordance with this program, the leakage rate acceptance criteria are $< 6.0 \, L_a$ for the Type B and C tests, $\leq 0.75 \, L_a$ for Type A tests, and $\leq 0.27 \, L_a$ for secondary containment bypass leakage paths.

b.   Air lock testing acceptance criteria are:

1) Overall air lock leakage rate is $\leq 0.05 \, L_a$ when tested at $\geq P_a$.

2) For the personnel air lock door seal, leakage rate is $< 0.01 \, L_a$ when pressurized to $\geq 1.0 \, P_a$.

3) For the emergency air lock door seal, leakage rate is $< 0.01 \, L_a$ when pressurized to $\geq 10$ psig.

ADMINISTRATIVE CONTROLS

f.   Radioactive Effluent Controls Program

A program shall be provided conforming with 10 CFR 50.36a for the control of radioactive effluents and for maintaining the doses to MEMBERS OF THE PUBLIC from radioactive effluents as low as reasonably achievable.  The program (1) shall be contained in the ODCM, (2) shall be implemented by operating procedures, and (3) shall include remedial actions to be taken whenever the program limits are exceeded.  The program shall include the following elements:

1)   Limitations on the operability of radioactive liquid and gaseous monitoring instrumentation including surveillance tests and setpoint determination in accordance with the methodology in the ODCM,

2)   Limitations on the concentrations of radioactive material released in liquid effluents to UNRESTRICTED AREAS conforming to ten times the concentration values in 10 CFR 20.1001 - 20.2401, Appendix B, Table 2, Column 2.

3)   Monitoring, sampling, and analysis of radioactive liquid and gaseous effluents in accordance with 10 CFR 20.1302 and with the methodology and parameters in the ODCM,

4)   Limitations on the annual and quarterly doses or dose commitment to a MEMBER OF THE PUBLIC from radioactive materials in liquid effluents released from each unit to UNRESTRICTED AREAS conforming to Appendix I to 10 CFR Part 50,

5)   Determination of cumulative and projected dose contributions from radioactive effluents for the current calendar quarter and current calendar year in accordance with the methodology and parameters in the ODCM at least every 31 days,

6)   Limitations on the operability and use of the liquid and gaseous effluent treatment systems to ensure that the appropriate portions of these systems are used to reduce releases of radioactivity when the projected doses in a 31-day period would exceed 2 percent of the guidelines for the annual dose or dose commitment conforming to Appendix I to 10 CFR Part 50,

7)   Limitations on the dose rate resulting from radioactive material released in gaseous effluents to areas at or beyond the SITE BOUNDARY shall be limited to the following:

a)   For noble gases:  Less than or equal to 500 mrem/yr to the total body and less than or equal to 3000 mrem/yr to the skin, and

b)   For Iodine-131, for Iodine-133, for tritium, and for all radionuclides in particulate form with half-lives greater than 8 days:  Less than or equal to 1500 mrem/yr to any organ;

8)   Limitations on the annual and quarterly air doses resulting from noble gases released in gaseous effluents from each unit to areas beyond the SITE BOUNDARY conforming to Appendix I to 10 CFR Part 50,

9)   Limitations on the annual and quarterly doses to a MEMBER OF THE PUBLIC from Iodine-131, Iodine-133, tritium, and all radionuclides in particulate form with half-lives greater

<u>ADMINISTRATIVE CONTROLS</u>

than 8 days in gaseous effluents released from each unit to areas beyond the SITE BOUNDARY conforming to Appendix I to 10 CFR Part 50,

10)   Limitations on the annual dose or dose commitment to any MEMBER OF THE PUBLIC due to releases of radioactivity and to radiation from uranium fuel cycle sources conforming to 40 CFR Part 190.

g.   <u>Radiological Environmental Monitoring Program</u>

A program shall be provided to monitor the radiation and radionuclides in the environs of the plant. The program shall provide (1) representative measurements of radioactivity in the highest potential exposure pathways, and (2) verification of the accuracy of the effluent monitoring program and modeling of the environmental exposure pathways. The program shall (1) be contained in the ODCM, (2) conform to the guidance of Appendix I to 10 CFR Part 50, and (3) include the following:

1)   Monitoring, sampling, analysis, and reporting of radiation and radionuclides in the environment in accordance with the methodology and parameters in the ODCM.

2)   A Land Use Census to ensure that changes in the use of areas at and beyond the SITE BOUNDARY are identified and that modifications to the monitoring program are made if required by the results of this census, and

3)   Participation in a Interlaboratory Comparison Program to ensure that independent checks on the precision and accuracy of the measurements of radioactive materials in environmental sample matrices are performed as part of the quality assurance program for environmental monitoring.

h.   Containment Leakage Rate Testing Program

A program to implement the leakage rate testing of the containment as required by 10 CFR 50.54(o) and 10 CFR 50 Appendix J, Option B, as modified by approved exemptions. This program is in accordance with the guidelines contained in Regulatory Guide 1.163, "Performance-Based Containment Leak-Test Program," as modified by the following exception(s):

a)   Bechtel Topical Report, BN-TOP-1 or ANS 56.8-1994 (as recommended by R.G. 1.163) will be used for type A testing.

b)   The first Type A test performed after the June 1992 Type A test shall be no later than June 2007.

The peak calculated containment internal pressure for the design basis loss of coolant accident $P_a$, is 41.8 psig. The containment design pressure is 44 psig.

The maximum allow containment leakage rate, $L_a$, at $P_a$, shall be 0.50% of containment air weight per day.